UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | |
|---|---|
| KARLA DONNETTE TAYLOR, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11-cv-871 |
| ) | |
| v. ) | Honorable Janet T. Neff |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

    This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On December 27, 2007, plaintiff filed her application for benefits alleging a May 14, 2007 onset of disability. Her claim for DIB benefits was denied on initial review. (A.R. 90-93). On June 18, 2010, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 43-88). On August 9, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-34). On July 15, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

    Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. She argues that the Commissioner's decision should be overturned on two grounds: (1) the ALJ's decision denying DIB benefits is not supported by substantial evidence, and (2) the ALJ violated the treating physician rule. (Plf. Brief at iv, docket # 13). Upon review, I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a

finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on May 14, 2007, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after May 14, 2007. (A.R. 18). Plaintiff had the following severe impairments: "right disc protrusion at C4-C5 with mild stenosis; disc herniation at L4-L5; history of headaches; degenerative changes in the right shoulder with cystic changes, sclerosis, spurring and loose matter in the shoulder; degenerative changes in the bilateral knees post right knee arthroscopy; carpal tunnel syndrome and obesity." (A.R. 18-19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 21). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant requires a sit/stand option at will. She can never climb ladders, ropes or scaffolds. She can never climb ramps or stairs. She can occasionally balance, stoop, crouch, kneel or crawl. She is limited to no overhead reaching with right arm. She is limited to no exposure to hazards, unprotected heights or moving machinery. She is limited to simple, routine and repetitive work.

(A.R. 22). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 22-33). Plaintiff was unable to perform any past relevant work. (A.R. 33). Plaintiff was 39-years-old on the alleged onset of disability, and 42-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 33). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 33). The transferability of job skills was not material to a disability determination. (A.R. 33). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 11,650 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 84-85). The ALJ found that this constituted a significant number of jobs. Using Rule 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 33-34).

**1.**

Plaintiff argues that the ALJ's factual finding regarding her credibility is not supported by substantial evidence. (Plf. Brief at 16-18; Reply Brief at 1-5). It is the ALJ's function to determine the credibility of the witnesses. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "An ALJ is in the best position to observe witnesses' demeanor and to make an appropriate evaluation of their credibility. Therefore an ALJ's credibility assessment will not be disturbed absent compelling reason." *Reynolds v. Commissioner*,

424 F. App'x 411, 417 (6th Cir. 2011) (citation omitted); *see Norris v. Commissioner*, 461 F. App'x 433, 438 (6th Cir. 2012) ("Because a reasonable mind might accept the evidence as adequate to support an adverse-credibility determination, we conclude that substantial evidence supports the ALJ's finding."). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 5 (6th Cir. Sept. 7, 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

Meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The

ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ gave a lengthy and detailed explanation why he found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 22-33). He carefully reviewed the chronology of plaintiff's treatment and noted the lack of objective medical evidence supporting the extreme limitations she claimed. Among other things, he observed that plaintiff's treating and examining physicians generally found that she had a normal gait, muscle tone, and strength:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. When evaluating the claimant's credibility as it relates to her assertions, I take into consideration various factors. I consider the objective medical evidence, medical treatment, medications taken, activities of daily living and work history.
>
> * * *
>
> The claimant has a treatment history that includes diagnostic testing that confirms some impairments to her neck, back, knees and shoulder that would support placement of significant limitations on her ability to work, which I have done. She also sought treatment from pain specialists, neurologists, orthopedic surgeons as well as her primary care physician that lends some credibility to her complaints of pain and limited mobility. She had physical therapy, injections, used TENS unit and took various medications to help control her pain and symptoms with varying degrees of success. She had surgery to her right knee with improved results, but continued pain. The claimant testified that she had headaches. These complaints were not frequently documented in the evidence and there was no ongoing treatment. She complained of problems dropping things, but [the] physical examination of her wrist showed normal findings. She started using a wrist splint. Her routine physical examinations and mostly conservative treatment do not fully support her severe allegations and inability to work.

Despite her allegations of mostly neck pain with low back pain in 2007, the evidence supports that she was still working until at least October 2007 (Exhibit 4F)[A.R. 382-83]. She mostly had conservative treatment. She underwent physical therapy in 2007 that initially helped, yet she failed to comply with all recommendations (Exhibit 7F/70)[A.R. 474]. Her physical examinations repeatedly noted a stable or normal gait (Exhibits 6F/11, 15, 18F)[A.R. 400, 403, 560-91]. Her motor examination consistently showed 5/5 strength or normal (Exhibit 6F/5, 14)[A.R. 394, 403]. Her range of motion testing was within normal limits for bilateral upper and lower extremities in December 2007 (Exhibit 9F)[A.R. 489-96]. The medical evidence does not support an inability to work in 2007.

In 2008, the claimant sought treatment for her shoulder pain. She had to reschedule her injections for her shoulder. She indicated that she had problems using the RS4i unit as she did not have anyone who could help her put on the garment (Exhibit 9F/4)[A.R. 489]. This difficulty in finding someone to help her is inconsistent with her testimony that she spends her entire day at her daughter's house due to her daughter helping and caring for her. It appears in 2008, she was not getting this help from her daughter. After her initial treatment and knee surgery, there was a big gap in continuous treatment from May 2008 until March 2009. This gap in treatment suggest[s] that her pain and limitations were not as severe and debilitating as alleged.

Dr. Waterbrook advised the claimant of her options of conservative treatment and management of pain or having surgery on her knee or shoulder in June 2008 (Exhibit 17F/6)[A.R. 556]. Contrary to claims made at the claimant's hearing, there was no indication of any surgery for her back or neck by Dr. Waterbrook. The treatment and evaluations that she obtained from Dr. Waterbrook pertained to her knees or shoulder. Nor is there any indication in the record, as the claimant alleged at her hearing, of any fear of surgery preventing her from having it. The reluctance to proceed with surgery applied to a total knee replacement and the claimant noted that she did not wish to proceed with this type of surgery at such a young age. She did not want to have to repeat the surgery at a later date (Exhibits 8F/6, 18F/5)[A.R. 483, 561].

Her treatment in 2009 and 2010 appears to be predominantly conservative with Dr. Coleman her primary care physician with medication management other than a brief period of treatment with a pain specialist in 2010 with limited success (Exhibits 16F, 18F)[A.R. 539-50, 560-91]. She continued with Flexeril, Lidoderm Patch, Neurotin and Loratab for pain without any consistently noted side effects. In July 2009, she noted problems with her stomach from taking her medications. However, this was not consistently noted in the record. She complained of being tired and itchiness from medications at her hearing, but only after these were suggested by counsel. Such side effects have virtually no support in the record. Her physical examinations consistently noted the following: no distress; no speech problems; normal gait; alert and oriented times three; no muscle atrophy or focal weakness; range of motion full or preserved without pain at extremes; cervical paraspinal tenderness to palpation. She continued to ambulate without assistance. Her treating notes

and documented treatment do not support her extreme allegations of severe pain or limited mobility. As indicated earlier, the claimant had improved energy and ability after starting Celexa in 2010.

* * *

In the claimant's brief, it was noted that the claimant was very concerned that I focused on the issues of whether the claimant was in distress or whether surgery was recommended (Exhibit l8E/4)[A.R. 253]. This issue arose only because the claimant testified that her doctor recommended back surgery. There was no evidence in the medical record that supported this assertion. The brief did not contain support of this allegation as discussed. Moreover, the claimant appeared in extreme distress at the hearing. She spoke in almost a hysterical tone, such that I was unable to understand her and had to stop the hearing. I found this unusual since her presentation during her examinations in the medical evidence never documented this type of behavior. Finally, the claimant presented to the hearing with a walker. She testified that she needed this walker due to falling down and her knees giving out. I noted on the record that I did not find this allegation supported in the medical record. Consequently, I requested counsel to provide support of these allegations in the medical evidence.

The claimant's representative, however, did not provide any documented examples of where she fell down and her legs gave out as requested. This is very telling, as the record, during the hearing and above, contains statements by the claimant to the contrary. For this reason, I find the claimant's allegations about her need for a walker due to her legs giving out and falling down, no[t] credible.

The claimant's allegations of severe depression, falling down, coupled with her extreme demeanor at the hearing, were in stark contrast to the evidence of record. I gave counsel an opportunity to find record support for the same, yet he failed to do so. Indeed, his post hearing brief did not even address the issue. Instead, counsel cited multiple x-rays and MRI studies at the hearing and read them into the record. However, despite these studies, objective physical examinations repeatedly documented essentially normal findings, as detailed above. Counsel noted that the claimant clearly has a medically determinable condition and claims that the treating notes are replete with complaints of pain, anxiety and depression. In fact, counsel cites only notes documenting pain complaints, yet fails to note that the physical examinations were routinely normal. Moreover, the record, contrary to counsel's claim, barely mentions anxiety and depression.

I find no support in record that claimant spent 5 months in her home due to being embarrassed and depressed as the claimant claimed at her hearing. I was unable to find any indication in the record where the claimant reported being too embarrassed to leave her home. This is significant because the claimant alleged that she was crying and hysterical at her hearing, because she was embarrassed. I requested that counsel brief how many instances

in the record where the claimant appeared in the level of distress, crying uncontrollably and speaking in a high-pitched voice that lacked comprehension. As noted, counsel cited none. In short, counsel's brief provided little support for the claimant's subjective allegations at the hearing.

Counsel notes that credibility is crucial in disability determinations. Yet, he failed to cite support of her allegations in the record, as detailed above. There was no support of the claimant crying uncontrollably, an inability to understand her speech, the needed use of a walker due to falls from her legs giving out, or complaints of significant depression. The medical evidence does not support her presentation at the hearing. In fact, it utterly contradicts it. The treating notes consistently indicated that she was in no distress throughout her appointments with the ability to ambulate without assistive device (Exhibit 18F)[A.R. 590-91]. At the hearing, the claimant's voice was hoarse and hard to understand. The medical evidence fails to document one instance where the claimant's speech was not comprehensible. I acknowledge the claimant had a history of vocal cord cyst and successful removal in 2006. But, the claimant reported good results with her friends noting her voice was improved and she sounded younger (Exhibit 2F/3)[A.R. 316]. Throughout the medical record, there was no documentation of inability to understand speech or problem with hoarseness (Exhibit 18F/8, 20)[A.R. 564, 576]. There was no additional treatment and this condition apparently had resolved with surgery over three years ago. The medical evidence does not support her extreme allegations and distress.

Any indication of significant depression for which treatment was sought first appeared in 2010, and resolved within a few months with medication. The lack of support of her allegations in the medical record undermines her credibility to the severity of her allegations and resulting limitations. While I find that I find the claimant's allegations as to the existence of physical impairments are credible, I do not find credible her allegations regarding the severity and persistence of her symptoms as well as the functional limitations that they allegedly cause. In making this finding, I considered her activities of daily living.

Her activities of daily living do not support a greater restriction than indicated in the residual functional capacity. Although the claimant has described daily activities that are limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition. The claimant testified that she remains in bed at her daughter's house and sleeps on and off all day. She stated that she does nothing all day. These extreme allegations of inactivity are not documented in any medical record. The claimant complained of pain when walking or activity, but she did not consistently report to her doctor that her condition is so limiting, and I was unable to find any reports corroborating her claim that [she] lies around and does nothing. There was an indication that she lacked the energy and motivation to do anything in January 2010, but that was due to mild depression, not her physical

impairments (Exhibit 18F/22)[A.R. 578]. However, after starting anti-depressants that month, her mood and energy level improved. Dr. Coleman recommended stretching prior to walking. Moreover, throughout the medical record, she had a normal gait and was able to ambulate without assistive device (Exhibits 6F, 18F)[A.R. 393-404, 560-91]. In January 2010, Dr. Coleman noted that she was able to walk without an assistive device. In March 2010, Dr. Coleman told her to go to the emergency room if [she experienced] severe pain or problems walking or moving [her] lower extremities (Exhibit 18F/27)[A.R. 583]. There were no trips to the emergency room in the evidence. It was not until a month prior to the hearing that she started using an assistive device.

The claimant testified that she has problems sleeping which cause her to sleep throughout the day. It was well documented that the claimant consistently took Ambien to help with her sleep. Her continued use of this same medication suggests that it helped, and I found no significant side effects consistently documented in the record. There was one indication that Ambien caused anmesia as a side effect as documented in the medical evidence and as the claimant testified at the hearing (Exhibit 18F)[A.R. 560-91]. However, she continued taking this medication. More importantly, her psychiatric examinations indicate no problem with memory and do not support this memory problem.

As indicated, I acknowledge some medical findings that would place limitations on the claimant's ability to work. I considered her pain and resulting limitations by limiting her to sedentary exertion level. I accommodated her need to adjust positions with her allegations of problems with prolonged standing or sitting, and allowed for a sit/stand option. I considered her obesity and limited her to no climbing or exposure to unprotected heights and moving machinery with only occasional frequency for other postural limitations. I considered her problems with her right shoulder and limited her to no overhead reaching with the right arm. I considered her complaints of problems with focus, concentration and sleep due to pain and limited her to simple, routine and repetitive work. These accommodations more than generously accommodate the claimant's credible limitations.

(A.R. 27-32). The ALJ's detailed credibility analysis is exemplary. He provides pinpoint citations to the page or pages in the administrative record supporting his findings. I find that the ALJ correctly applied the law and that his factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ violated the treating physician rule. Her initial brief (Plf. Brief at 19-20) did not identify any physician, but her reply brief (docket # 17, Reply Brief at 5-9) clarified that she was referring to Patricia Coleman, M.D. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

Dr. Coleman is plaintiff's family physician. On January 26, 2009, she completed a one-page document directed to a rehabilitation counselor at the Michigan Department of Labor and Economic Growth. She indicated that her diagnosis of plaintiff's condition was chronic neck pain, osteoarthritis of both knees, carpal tunnel syndrome on the right, left hand pain, and degenerative joint disease. Coleman indicated that plaintiff should avoid lifting more than 10 pounds, prolonged standing, prolonged sitting. She stated that plaintiff "sometimes has difficulty getting out of bed," without further explanation. She indicated that plaintiff was not released to work: "Mobility issues and problems w/using the [right upper extremity] RUE." She stated that plaintiff's ability to walk independently needed to be evaluated before plaintiff was released to work. (A.R. 560).

On March 27, 2009, Dr. Coleman noted that plaintiff was alert, awake, and in no distress. Her shoulders were stable and had a full range of motion without pain. Plaintiff related that following arthroscopic surgery on her right knee she continued to experience pain and was using a motorized device when she went grocery shopping. Plaintiff stated that she had been advised that she would need total knee replacement, but she was "trying to wait for this until she gets older, since she feels it may need to be re-done if surgery is done while she is too young." (A.R. 561).

On May 13, 2009, plaintiff reported a two-week onset of neck pain. Dr. Coleman diagnosed the condition as an acute cervical strain. She noted that plaintiff was in no distress. She had no numbness, tingling, or weakness in her extremities. Dr. Coleman gave plaintiff prescriptions for pain medication and muscle relaxants. Plaintiff was instructed to return to Dr. Coleman's office

or go to the emergency room "if any numbness or weakness [was] noted in the upper or lower extremities." (A.R. 565).

On June 26, 2009, plaintiff returned to Dr. Coleman for an annual physical. (A.R. 566-68). Plaintiff had no muscle atrophy or focal weakness. She had a full range of motion in her upper and lower extremities and her grip strength was normal. (A.R. 568).

On July 29, 2009, plaintiff reported to Dr. Coleman that her knees "do not give out" and that she "had no falls." (A.R. 569). Her gait was normal. She had no muscle atrophy or focal weakness. On August 28, 2009, plaintiff reiterated that her knees did not give out. (A.R. 571). Her gait was normal. (A.R. 572).

On September 11, 2009, plaintiff complained of joint pain in her right knee with occasional swelling, stiffness or limited motion. Upon examination, Dr. Coleman found that plaintiff had a full range of motion, no numbness, tingling or weakness in any of her extremities, and "no trouble with walking or balance." (A.R. 573). On December 4, 2009, Dr. Coleman noted that plaintiff had no balance problems and no sensory or motor deficits." (A.R. 576).

On January 13, 2010, Dr. Coleman stated that plaintiff was able to walk without an assistive device. She had no sensory or motor deficits. Her gait was normal. Her neck had a full range of motion without pain. (A.R. 579). On March 15, 2010, plaintiff's strength was 5/5 in her upper and lower extremities. Her grip strength was normal. (A.R. 583).

On April 19, 2010, plaintiff complained of chronic right knee pain. (A.R. 584). Dr. Coleman noted that there was "no giving out of the knee or clicking." (*Id.*). There was "no tingling, numbness, or changes in the skin distal to the knee" and "no recent injuries to the knee." (*Id.*).

Plaintiff had no loss of sensation, numbness, tingling, tremors, or weakness in her extremities. (A.R. 585).

The ALJ generally agreed with Dr. Coleman. His factual finding regarding plaintiff's RFC limited her to sedentary work with a sit/stand option. However, the ALJ gave no weight to Dr. Coleman's opinion on the issue of disability, which is reserved to the Commissioner:

> I give some weight to Dr. Coleman's letter to Department of Labor and Economic Growth. In her letter, Dr. Coleman indicated that the claimant should avoid lifting more than 10 pounds, or engage in prolonged standing or sitting. The residual functional capacity that I assessed is generally consistent with these limitations. Specifically, I limited the claimant to sedentary work with a sit stand option with other postural limitations. However, I note that Dr. Coleman's treating notes and relatively normal findings in her physical examinations do not support the conclusion that the claimant should not be released for work (Exhibit 18F/4)[A.R. 560]. Dr. Coleman indicated that before being released to work, the claimant's ability to walk independently must be evaluated. This is inconsistent with her treating notes and the claimant consistently presenting for her examinations with the ability to ambulate effectively without assistive device.[1] Dr. Coleman did not give any details supporting her conclusion that she cannot work due to her problem with her right upper extremity. Two months after this letter, Dr. Coleman indicated that the claimant had full range of motion of both shoulders without pain. The claimant's shoulders were stable (Exhibit 18F/5)[A.R. 561]. These physical findings are inconsistent with her opinion. For these reasons, I give that portion of Dr. Coleman's opinion, no weight.

(A.R. 32). Dr. Coleman's opinion that plaintiff was disabled was not entitled to weight because the issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). The issue of RFC

---

[1] Earlier in his opinion, the ALJ noted that the record did not support plaintiff's purported need for a walker. (A.R. 22). This is correct. Plaintiff elected not to provide the ALJ with Dr. Coleman's progress notes for April 29, 2010, the date Coleman supplied a prescription for a walker. (A.R. 590). Plaintiff did submit the progress notes in support of her unsuccessful application for review by the Appeals Council. (A.R. 600-02). This court's review is necessarily limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478. Even assuming that the court could consider Dr. Coleman's April 29, 2010 progress notes and her other progress notes from 2010 predating the ALJ's decision, the evidence would further undermine rather than support plaintiff's claim for DIB benefits. Dr. Coleman prescribed the walker shortly before plaintiff's administrative hearing based on plaintiff's reports of several recent falls (A.R. 600), yet progress for the remainder of the year describe plaintiff's gait was "normal." (A.R. 604, 610).

is also reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). The ALJ complied with the procedural requirement of the treating physician rule and provided good reasons for the weight he gave to Dr. Coleman's opinions. *See Cole v. Astrue*, 652 F.3d at 659-61. I find no violation of the treating physician rule.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  September 24, 2012          /s/  Joseph G. Scoville
                                    United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).